# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JOHN ZENATY, JR., | Case No.: 1:17-cv-01362-BAM |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Robert John Zenaty, Jr. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DBI") under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 5, 7.)

1

and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

On January 29, 2014, Plaintiff filed an application for disability insurance benefits. AR 166-69.[2] Plaintiff alleged that he became disabled on January 17, 2013, due to lumbar radiculopathy, degenerative joint disease of the cervical spine, spinal stenosis, spondylosis, chronic low back pain, high blood pressure and high cholesterol. AR 189. Plaintiff's application was denied initially and on reconsideration. AR 100-04, 108-12. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ G. Ross Wheatley held a hearing on November 17, 2015, and issued an order denying benefits on January 8, 2016. AR 17-31, 36-74. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-4. This appeal followed.

### **Hearing Testimony**

The ALJ held a hearing on November 17, 2015, in Stockton, California. Plaintiff appeared with his representative, Steven Michael Tow. Impartial Vocational Expert ("VE") Cathleen Spencer also appeared. AR 38.

In response to questioning by the ALJ, Plaintiff testified that he is a high school graduate with no college education. He was in the cabinet trade for a period of time and then worked as an electrician. He took vocational classes in high school, but never went through an apprenticeship program. He was considered a journeyman. AR 41-42.

Plaintiff testified that he stopped working in 2011. He did not recall filing for unemployment in 2013, and did not believe he could work at that time. He did not file for worker's compensation. AR 43-44.

When asked about his physical issues, Plaintiff testified that his neck and spine cause him the most problems. With respect to his neck, if he elevates his arms above his shoulders for any length of time, then they go numb. He can raise his arms overhead for a short period of time, about 15 minutes

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

before he starts to lose feeling. When working from shoulder level down, he has strength issues with periodic numbness from turning his head. For his neck, he has tried acupuncture, spinal injections and physical therapy, all which did not help. He also attended a six-week pain management course. He receives ongoing treatment for his neck, taking medications that desensitize the nerves. It helps a little bit, but he is in pain 24 hours a day. AR 44-48. With respect to his lower back, Plaintiff testified that he gets numbness in his legs quite often, mostly in his right leg, after 10 or 15 minutes of standing. He only takes medications to desensitize the nerves, not narcotic pain medications. He has a muscle relaxer to take at night because he does not sleep well, but otherwise it is just Tylenol. Surgery has not been recommended for his neck or back because he has problems from his neck to his tailbone. He has not done hydrotherapy, but does use a hot tub twice a day to help relax the muscles. AR 48-51. With respect to his high blood pressure and cholesterol, Plaintiff takes medications and those conditions have been under control for about six years. He does not do any other treatment for his kidney disease. AR 51-52. He had emergency surgery for gallstones in late 2014, but the issue was resolved and his gallbladder removed. AR 60-61.

When asked about a typical day, Plaintiff testified that he can shower and dress himself. He does most of the cooking. His wife usually takes care of things around the house, like laundry and dishes. Plaintiff will sometimes put things in the laundry or vacuum a room once or twice a week. He takes out the trash every two days, and a standard load is about 20 pounds. He also walks around the property, about 75 yards, and takes the dogs out. He will read the news on the internet and watch TV for an hour or an hour and a half. He recently went to the Bay Area and had lunch with one of his buddies. He attends church once a month. He goes grocery shopping with his wife about once a week. He has a driver's license and drives once or twice a week to the store or his doctors. He drove about 45 miles to the hearing, and recently drove an hour and twenty minutes from Union City without stopping. AR 52-60.

In response to questions from his representative, Plaintiff testified that he did know if he had side effects from his medications, Nortriptyline and Gabapentin. He does not sleep well at night, and sleeps maybe a couple hours. Even with the symptoms in his arms, he does not normally drop things. Even when his legs go numb, he has not fallen, but keeps a cane just in case. He last used the cane for

one day two weeks prior to the hearing. AR 61-63. Plaintiff also testified that he has difficulties tying his shoes and bending over. Most of the time he wears slip-on shoes. AR 63.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Cathleen Spencer. The VE classified Plaintiff's past work as electrician. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience who was capable of performing at the light level defined as standing or walking for approximately six hours during an eight-hour day, sitting for up to six hours during an eight-hour day with normal breaks, no ladders, ropes or scaffolds, occasional ramps and stairs, stooping, crouching, kneeling, and crawling, frequent balancing, occasional bilateral overhead reaching, and avoiding all exposure to hazardous machinery and unprotected heights. The VE testified that such a person would not be capable of performing Plaintiff's past work, but would be capable of performing other jobs, such as fast food worker, cashier II, and silver wrapper. AR 67-69.

The VE also testified that Plaintiff would have transferable skills from his job as an electrician to an electrical inspector. These skills would include knowledge of the electrical code and rules. The VE testified that these skills would not transfer to the limitations because inspectors still are required to climb ladders and sometimes be at unprotected heights. AR 69-70.

The VE stated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), but noted that the DOT does not distinguish between reaching in one direction versus all other directions. The VE reported that her opinions on the provided position are based on speaking with employers about the requirements of their jobs. AR 70.

For the second hypothetical, the ALJ asked to VE to add to hypothetical one that due to a combination of medical conditions associated with pain, the person would have three or more unexcused or unscheduled absences per month. The VE testified that all work would be precluded. AR 70.

For the third hypothetical, the ALJ asked the VE to add to hypothetical one that due to a combination of medical conditions and associated pain, the person would require additional breaks every two hours for 30 minutes in addition to regularly scheduled breaks. The VE testified that there would not be jobs for this person. AR 71.

4

For the fourth hypothetical, the ALJ asked the VE to add to hypothetical one that due to a combination of medical conditions and associated pain, the individual would be unable to engage in sustained work activity on a regular and continuing basis for 40 hours a week or for 8 hours a day, 5 days a week for a 40-hour workweek or equivalent. The VE testified that there would not be competitive work for this individual. AR 71.

For the fifth hypothetical, Plaintiff's representative asked the VE to assume an individual of Plaintiff's age, education and background work experience at a sedentary level. The VE testified that skills from the past work would not transfer to that level and the individual could not perform Plaintiff's past work. AR 71-72.

For the sixth hypothetical, Plaintiff's representative asked the VE to assume the same individual in hypothetical one who would be off task 15% or more of the workday due to pain or other symptoms. The VE testified that this individual would not be able to perform Plaintiff's past work or any other work. AR 72.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 17-31. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 17, 2013, his alleged onset date. The ALJ identified degenerative disc disease of the lumbar spine with radiculopathy and degenerative joint disease of the cervical spine with radiculopathy as severe impairments. AR 22-23. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 23. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work defined as standing or walking for approximately six hours during an eight-hour day and sitting for up to six hours during an eight-hour day with normal breaks. He could not climb ladders, ropes or scaffolds, occasionally could climb ramps and stairs and stoop, crouch, kneel and crawl, frequently

could balance, occasionally could reach overhead bilaterally, and must avoid all exposure to hazardous machinery and unprotected heights. AR 23-29. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including fast food worker, cashier II and silver wrapper. AR 29-30. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 31-32.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff argues that the ALJ erred by (1) failing to properly weigh the medical opinion evidence from Plaintiff's treating physicians, Dr. Edsell Bernardo and Dr. Mark Faryan; and (2) failing to properly evaluate Plaintiff's credibility. Plaintiff also argues that the Appeals Council failed to properly consider new evidence.

# **DISCUSSION**[3]

### A. Treating Physicians' Opinions

Plaintiff first argues that the ALJ erred by assigning little weight to the opinions of his treating physicians, Drs. Bernardo and Faryan. (Doc. No. 13 at pp. 14-15.)

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

In this instance, the opinions of Drs. Bernardo and Faryan arguably were contradicted by the state agency physicians, who determined that Plaintiff could lift and/or carry 20 pounds occasionally,

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday, occasionally could climb ramps, stairs, could never climb ladders, ropes or scaffolds, frequently could balance, occasionally could stoop, kneel, crouch or crawl, and must avoid all exposure to hazards, such as machinery and heights. AR 82-84, 95-96. Thus, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to reject the opinions of Drs. Bernardo and Faryan.

Dr. Bernardo

On May 1, 2014, Dr. Bernardo completed an Impairment Questionnaire, indicating he first treated Plaintiff in January 2013. Dr. Bernardo identified Plaintiff's diagnoses to include chronic low back pain, chronic kidney disease, degenerative disc disease of the cervical spine, hypertension, hyperlipidemia, lumbar radiculopathy, obesity, idiopathic scoliosis, spinal stenosis and spondylosis without myelopathy. Plaintiff's primary symptoms were chronic upper neck and lower back pain with occasional radicular symptoms, which were aggravated by weight bearing or moving his arms/upper extremities overhead. AR 525-26. Dr. Bernardo opined that Plaintiff could sit for one hour in an 8-hour workday and stand and/or walk less than one hour in an 8-hour workday. Plaintiff also would have to avoid continuous sitting in an 8-hour workday and would have to get up every hour for up to an hour. Dr. Bernardo further opined that Plaintiff could lift or carry up to 5 pounds frequently, up to 10 pounds occasionally and never/rarely more than 10 pounds. Plaintiff also had limitations in reaching, handling and fingering above the shoulders. He frequently could grasp, turn, and twist objects and use his hands/fingers for fine manipulations, but could never/rarely use his arms for reaching. AR 527-28. Dr. Bernardo also opined that Plaintiff's pain, fatigue or other symptoms would frequently interfere with attention and concentration during an 8-hour workday. Plaintiff also would need to take unscheduled breaks "within an hour/every hour" and would need to rest for a few minutes up to several hours. Plaintiff also likely would be absent from work as a result of his impairments more than three times a month. AR 528-30.

In evaluating Dr. Bernardo's opinion, the ALJ reasoned as follows:

> The undersigned gives little weight to Dr. Bernardo's extreme opinions, which are inconsistent with the claimant's high activities of daily living, which include lifting of 20

>pounds on a weekly basis, and the medical record, indicating conservative treatment throughout the record with no narcotic pain medication.

AR 29.

As noted above, Plaintiff argues that the ALJ erred in his evaluation of Dr. Bernardo's opinion. The Court disagrees, and finds that the ALJ provided specific and legitimate reasons for discounting that opinion. As one reason, the ALJ discounted Dr. Bernardo's opinion regarding Plaintiff's limitations because that opinion was inconsistent with Plaintiff's activities of daily living, including Plaintiff's ability to lift 20 pounds on a weekly basis. AR 30. An ALJ may properly discount a treating doctor's limitations where those limitations appear to be inconsistent with the claimant's activity level. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (noting conflict between physicians' opinions about claimant's functioning and ability to engage in meaningful adult activities may justify rejecting a treating provider's opinion); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding ALJ provided adequate reasons for rejecting treating physician's opinion, including where the physician's restrictions appeared to be "inconsistent with the level of activity that [the claimant] engaged in"). Here, the ALJ properly determined that Plaintiff's ability to carry garbage weighing 20 pounds, groceries (while going grocery shopping twice a week) and a case of bottled water was inconsistent with the limitations imposed by Dr. Bernardo, who opined that Plaintiff could carry no more than 10 pounds occasionally and five pounds frequently. AR 25, 30, 53, 58, 196-97. Additionally, Dr. Bernardo's limitation of Plaintiff to less than one hour of sitting in an 8-hour day was in direct conflict with the ALJ's citation of Plaintiff's own testimony that he recently drove for more than an hour without stopping and drove 45 miles to the hearing and attends church. AR 25, 57-58, 59-60. Dr. Bernardo's limitation of Plaintiff to standing and/or walking less than one hour in an 8-hour workday also conflicted with Plaintiff's testimony, cited by the ALJ, that he takes the garbage out, prepares most meals, vacuums, and grocery shops twice a week. AR 25, 52-53, 58, 197. Thus, substantial evidence supports the ALJ's determination that Plaintiff's daily activities were inconsistent with Dr. Bernardo's assessment of extreme limitations.

As another reason, the ALJ discounted Dr. Bernardo's opinion based the medical record, which indicated conservative treatment with no narcotic pain medication. AR 30. A conservative course of

treatment can also justify discounting a treating physician's finding of total disability. *Rollins*, 261 F.3d at 856 (noting that treating physician's conservative course of treatment was not the sort of recommendation one would expect to accompany a finding that the claimant was totally disabled). In his decision, the ALJ noted that Plaintiff was treated conservatively with certain medications (AR 355, 407), acupuncture (AR 367), physical therapy (AR 389), a home electrical nerve stimulator unit (AR 410), a home exercise program (AR 407), and an epidural steroid injection (AR 434). AR 25-27. As the ALJ correctly notes, Plaintiff did not take narcotic pain medications, and the record generally reflects conservative treatment, with no surgery or narcotic pain medications.

Plaintiff contends that the ALJ erred by faulting Plaintiff for not taking narcotic pain medications.[4] (Doc. No. 13 at 16-17.) However, there is nothing in the record to suggest that Plaintiff regularly used pain medications, much less narcotic pain medications. Indeed, Plaintiff's testimony suggests that he takes only Tylenol for pain. AR 50. Plaintiff also argues that the ALJ erroneously characterized his epidural steroid injections as conservative treatment, citing *Garrison v. Colvin*, 759 F.3d 995, 1015 n. 20 (9th Cir. 2014), in which the Ninth Circuit expressed "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment." (Doc. No. 13 at 16.) In this instance, however, the record reflects only one attempted use of epidural injections, not repeated injections as was the case in *Garrison*. 759 F.3d at 1015 ("Turning to the epidural shots, Wang and Feldman's records make clear that epidural shots never provided Garrison any relief for her neck pain, and that they relieved Garrison's back pain for only variable, brief periods of time, ranging from a couple of months to a few days."). And also unlike *Garrison*, the record here reflects that Plaintiff received 60% improvement, but did not pursue further injections. AR 451.

<u>Dr. Faryan</u>

On November 20, 2015, Dr. Faryan completed a Disability Impairment Questionnaire, indicating that he began treating Plaintiff on May 11, 2015. Dr. Faryan identified Plaintiff's diagnoses

---

[4] Plaintiff appears to request that the Court to consider extra-record evidence in the form of a letter from the former United States Surgeon General "to all physicians in the United States that urges restraint in the use of opioid medications in all but the most severe pain cases due to the addictive nature of narcotics." (Doc. No. 13 at 17.) There is no indication that this letter was presented to the ALJ, the Appeals Council or Plaintiff's physicians during the relevant time period, and the Court declines to consider it.

10

as low back pain, neck pain and radicular pain in both arms, and described his symptoms as "neck pain, back (low back) pain can't stand for more than 30 mins doing chores sometimes (ADL's) [sic], shoulders 'go out.'" AR 616-17. Dr. Faryan indicated that the nature of Plaintiff's pain was dull, constant, occasionally sharp in his low back, neck, arms and shoulders. Being on his feet more than 30 minutes would be a precipitating or aggravating factor. AR 617. Dr. Faryan opined that in an 8-hour workday, Plaintiff could sit for 2 hours "or less," but noted, "I'm not sure of this." AR 618. Dr. Faryan also opined that in an 8-hour workday, Plaintiff could stand and/or walk less than 1 hour and could be 30 minutes on his feet standing. *Id.* Plaintiff also would have to avoid continuous sitting in an 8-hour workday and Dr. Faryan believed that Plaintiff would probably need to get up every hour, possibly for 20 minutes. *Id.* Dr. Faryan further opined that Plaintiff occasionally could lift and carry up to 10 pounds, but never lift or carry more than 10 pounds. *Id.* Plaintiff occasionally could grasp, turn and twist objects, use his arms for reaching, including overhead, and use his hands/fingers for fine manipulations. He also frequently could use his hands/fingers for fine manipulations, but "his back might hurt too much + neck." AR 619. Dr. Faryan believed that Plaintiff's symptoms would increase if he were placed in a competitive work environment, and he "would likely need PAIN meds + neck + back + arms would get worse." *Id.* In an 8-hour workday, Plaintiff's pain or other symptoms would be severe enough to interfere with attention and concentration occasionally. *Id.* Plaintiff also would need to take unscheduled breaks of 10 to 20 minutes every 30 minutes if standing or every 30 minutes if sitting. *Id.* Dr. Faryan believed Plaintiff would be absent more than 3 times a month as a result of his impairments. AR 620. Dr. Faryan also commented that Plaintiff was a good historian and appeared honest and trustworthy. Dr. Faryan opined that Plaintiff seemed to be "a good candidate for early social security retirement due to medical problems." *Id.*

In evaluating Dr. Faryan's opinion, the ALJ reasoned as follows:

> The undersigned has also considered the opinions submitted by the claimant's current primary care physician, Dr. Mark Faryan, dated November 20, 2015 (Exhibit 10F). Dr. Faryan initially treated the claimant on May 11, 2015, and the medical record indicates only two more visit[s] since that date (*Id.*, Exhibits 8F/1-6, 9F/7-9) . . . . The undersigned gives little weight to Dr. Faryan's opinions, as he [ ] is unfamiliar with the claimant's symptoms, having treated only three times, and for less than 12 continuous months. His unfamiliarity is demonstrated by statement, which contains questions marks and

11

statement[s] that he is unsure of parts of his opinion. Accordingly, Dr. Faryan's opinions appear to rely heavily on the claimant's subjective symptoms. Notably, Dr. Faryan's opinion regarding the claimant's lifting and carrying abilities is not inconsistent with the undersigned's findings and the claimant's high activities of daily living.

AR 28.

As indicated above, Plaintiff argues that the ALJ erred in his evaluation of Dr. Faryan's opinion. The Court disagrees. Rather, the ALJ properly considered the factors set out in 20 C.F.R. § 404.1527(c), such as length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Trevizo*, 871 F.3d at 675 ("When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationships and the frequency of the examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician."). For instance, the ALJ considered the specialization of the physician, along with the length of the treatment relationship and the frequency of examination, pointing out that at the time of the Dr. Faryan's opinion, he had been treating Plaintiff as his primary care physician for approximately six months and had examined Plaintiff only three times in that period. AR 28, 596-98, 599-01, 608-10. The ALJ also considered the nature and extent of the treatment relationship, noting that Dr. Faryan was unfamiliar with Plaintiff's symptoms due not only to the limited number of examinations, but also based on evidence from Dr. Faryan's own opinion, which contained question marks and statements that he was unsure of parts of his opinion. AR 28, 618 (Dr. Faryan's statements: "I'm not sure of this," "not sure how long," "I believe probably every 1 hour," and "20 min?".) The ALJ also considered the supportability and consistency of the opinion, finding that it appeared to rely heavily on Plaintiff's subjective complaints, which, as discussed more fully below, were properly discounted. AR 28. However, the ALJ also acknowledged the portion of Dr. Faryan's opinion that was consistent with Plaintiff's activities of daily living. AR 28.

For these reasons, the Court finds that the ALJ did not commit reversible error in his evaluation of Dr. Bernardo's or Dr. Faryan's opinions. Plaintiff attempts to argue that the longitudinal treatment record supports the opinions of his treating physicians. (Doc. No. 13 at 15-16.) However,

the ALJ indicated that Plaintiff had limited objective findings on examination, with only two instances of straight leg raising to 45 degrees, and solely tenderness and mild limited range of motion. AR 27.

According to the record, on January 17, 2013, Plaintiff's alleged disability onset date, he had no objective findings on examination and subsequent thoracic spine x-rays showed only mild degenerative changes and lumbar spine x-rays showed only mild-moderate changes. AR 25, 297-98, 315-16. On February 12, 2013, examination revealed trapezius and right lumbar paraspinal tenderness, moderate decrease in extension of his neck range of motion, and mild decrease in his lumbar range of motion. However, he had full range of motion of his extremities without pain, full strength in his extremities and negative straight leg raising. AR 25, 325-27. On April 23, 2013, objective findings on examination revealed tenderness and straight leg testing positive at 45 degrees for both legs. Plaintiff was diagnosed with spinal stenosis, degenerative joint disease of the cervical spine and spondylosis without myelopathy. AR 26, 354-55. On November 8, 2013, objective findings revealed tenderness in the lower lumbar region, steady gait with slight limp on right side. AR 26, 410. On January 6, 2014, Plaintiff was negative for straight leg raising, and had no specific sensory deficit in extremities and no joint tenderness. AR 26, 458-60. On January 16, 2014, Plaintiff was noted to have some lower back pain and neck pain at the end range of flexion and extension with tingling in both arms with lateral flexion/rotation. AR 26, 481-82. On February 19, 2014, Plaintiff had pain in the lateral side of his right thigh and some sensory deficits in the arch of his right foot, but negative straight leg raising with no other objective findings. AR 27, 252-54. On May 11, 2015, Plaintiff began treating with Dr. Faryan, and objective findings on examination showed contractures of neck and lumbar spine, but negative straight leg raising. AR 27, 596-98. On July 22, 2015, examination revealed bilateral straight leg raising at 45 degrees and paresthesia when raising arms above shoulders, on October 9, 2015, Plaintiff had limited range of motion in his neck and tenderness, atrophy of his right calf and contractures of the neck and lumbar spine. AR 27, 599-01, 608-10. The ALJ's determination of limited objective findings on examination is supported by substantial evidence in the record.

Further, the ALJ was entitled to rely on the opinions of the state agency physicians. Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies

the rejection of the opinion of either an examining physician or a treating physician," *Lester*, 81 F.3d at 831, reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

As noted above, the state agency physicians determined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday, occasionally could climb ramps, stairs, could never climb ladders, ropes or scaffolds, frequently could balance, occasionally could stoop, kneel, crouch or crawl, and must avoid all exposure to hazards, such as machinery and heights. AR 82-84, 95-96. The ALJ assigned these opinions significant weight, noting they were consistent with the conservative treatment record and Plaintiff's high activities of daily living. AR 29. In so doing, the ALJ cited the same reasons discussed above to discount the opinions of Plaintiff's treating physician, Dr. Bernardo. For those same reasons, the Court finds that the opinions of the state agency physicians may serve as substantial evidence to discount the opinions of Drs. Bernardo and Faryan.

### B. Evaluation of Plaintiff's Testimony

Plaintiff argues that the ALJ erred in rejecting Plaintiff's subjective complaints. The Court disagrees.

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR 24. If, as here, the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ provided several specific, clear and convincing reasons for discounting Plaintiff's testimony. First, the ALJ appropriately considered Plaintiff's "good reports of activities of

14

daily living, which [were] greater than one would expect for a totally disabled individual." AR 24-25. An ALJ can properly discount a claimant's credibility when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue,* 674 F. 3d 1104, 1112–1113 (9th Cir. 2012). The ALJ could reasonably conclude that Plaintiff's activities, including preparing most meals for him and his wife, doing the dishes, vacuuming and the laundry, performing his own personal care, taking out the garbage, which he testified was about 20 pounds, carrying the grocery bags, going grocery shopping once or twice a week, attending church once a month, driving and spending more than one hour driving in the past year undermined his claims that he was unable to stand for more than 10 or 15 minutes, had strength issues in his arms and was totally disabled Plaintiff's activities were more extensive than the level of activity the Ninth Circuit has previously found to undermine allegations of totally disabling symptoms. *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (affirming the ALJ's finding that a claimant was "quite functional" because she could cook, clean, shop, interact with others, and manage finances).

Second, the ALJ considered that Plaintiff "betrayed no evidence of pain or discomfort while testifying at the hearing." AR 25. Although the ALJ's observations of the claimant at the hearing may not form the sole basis for discrediting the claimant's testimony, such observations may be used in the overall credibility evaluation. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). Here, the ALJ acknowledged that the hearing was short-lived and could not be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis. Nevertheless, the ALJ permissibly gave "some slight weight" to his observation of Plaintiff's "apparent lack of discomfort during the hearing" to discount Plaintiff's subjective statements. AR 25.

Third, the ALJ discounted Plaintiff's allegations of disabling pain because he had not been prescribed or recommended for narcotic pain medications and he underwent conservative treatment. Plaintiff's relatively conservative treatment was also a proper consideration. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that claimant's pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment

is sufficient to discount a claimant's testimony regarding severity of an impairment.") Here, the ALJ reasonably observed that Plaintiff had not been treated with narcotic pain medications. As explained above, this is supported by the record, including Plaintiff's testimony that he takes only Tylenol for pain. *See* AR 50. Additionally, the ALJ reasonably observed that Plaintiff's records described conservative treatment and that Plaintiff had "not generally received the type of medical treatment one would expect for a totally disabled individual." AR 25. As noted by the ALJ, Plaintiff was treated conservatively with certain medications (AR 355, 407), acupuncture (AR 367), physical therapy (AR 389), a home electrical nerve stimulator unit (AR 410), a home exercise program (AR 407), and an epidural steroid injection (AR 434). AR 25-27.

Plaintiff appears to argue that the ALJ also erred by failing to consider his work history. However, "courts have rejected the contention that the ALJ is required to address a claimant's exemplary work history in assessing [his] credibility." *Coffman v. Berryhill*, No. 2:17-cv-2088 CKD, 2018 WL 6419676, at *6 (E.D. Cal. Dec. 6, 2018) (quotation omitted) (collecting cases); *Goldman v. Berryhill*, No. 2:17-cv-2450 DB, 2019 WL 498996, at *5 (E.D. Cal. Feb. 8, 2019).

The Court finds that the ALJ's assessment of Plaintiff's subjective complaints is free of reversible error. Even if some of the reasons provided could be found inadequate, however, there are sufficient reasons provided to support the credibility determination. *See Batson*, 359 F.3d at 1197.

### C. Evidence Submitted to Appeals Council

Plaintiff also requests remand based on evidence from Dr. Moris Senegor submitted to the Appeals Council after the ALJ's decision. (Doc. No. 13 at 22-23.) These records are dated May 12, 2016, and May 19, 2016. AR 2.

The Appeals Council must consider new evidence that postdates the ALJ's decision if the evidence relates to the period before the ALJ's decision. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011) (citing 20 C.F.R. § 404.970(b)); *see also Whipple v. Berryhill*, No. 1:16-CV-01254-JLT, 2018 WL 1517319, at *7 (E.D. Cal. Mar. 28, 2018) (notion that relevant evidence dated after the AJ hearing decision can relate to the period on or before the date of the ALJ's decision). When the Appeals Council considers new evidence in denying review of the ALJ's decision, this Court considers on appeal both the ALJ's decision and the additional material submitted

to the Appeals Council. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); see Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) (holding that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").

Here, in denying review, the Appeals Council noted that Dr. Senegor's evidence was dated after the ALJ's decision and "does not relate to the period at issue." AR 2. Accordingly, the Appeals Council determined that the additional evidence did not affect the decision about whether Plaintiff was disabled on or before January 8, 2016. *Id.* The Court agrees.

Dr. Senegor's independent medical examination provides objective medical findings that show Plaintiff's condition only as of the date of examination on May 12, 2016, not Plaintiff's condition during the relevant time period. AR 643-46. Similarly, Dr. Senegor's functional assessment, which indicated that Plaintiff could sit for less than 1 hour in an 8-hour workday, stand and/or walk less than 1 hour in an 8-hour workday, and could never lift or carry more than 10 pounds, also does not appear related to Plaintiff's abilities and limitations during the relevant time period. AR 637- Dr. Senegor completed the functional assessment on May 19, 2016, and noted that he had seen Plaintiff only once, on May 12, 2016. AR 637.

Although Dr. Senegor opined that Plaintiff's spine problems had worsened to the degree that he was "no longer able to engage in gainful employment as of 01/17/13," Dr. Senegor did not examine or treat Plaintiff during the relevant time period. AR 643-46. Therefore Dr. Senegor had no direct knowledge of Plaintiff's condition or limitations during the time period on or before January 8, 2016. At best, Dr. Senegor's evaluation and functional assessment indicate possible deterioration of Plaintiff's condition after the ALJ's decision.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Robert John Zenaty, Jr.

IT IS SO ORDERED.

Dated: __**March 7, 2019**__          /s/ *Barbara A. McAuliffe*
                                                  UNITED STATES MAGISTRATE JUDGE